IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JOHN DONALD SUMMERVILLE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 2:13-902 |
| | ) | Judge Cathy Bissoon |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | Magistrate Judge Lisa Pupo Lenihan |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

## I. Introduction

Plaintiff John Donald Summerville ("Summerville") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 17 & 20. For the reasons that follow, it is respectfully recommended that Summerville's motion for summary judgment (*ECF No. 17*) be denied, that the Commissioner's motion for summary judgment (*ECF No. 20*) be granted, and that the Commissioner's decision be affirmed.

## II. Procedural History

Summerville initially applied for SSI benefits on June 27, 2007, alleging that he had become "disabled" on October 20, 2006. R. at 82. The application was denied by Pennsylvania's Bureau of Disability Determination ("Bureau"). R. at 82. Summerville requested a hearing, which was ultimately held before Administrative Law Judge James J.

Pileggi. R. at 82. Judge Pileggi denied Summerville's claim in a decision rendered on November 14, 2008. R. at 82-91. Summerville responded to that decision by filing a request for review with the Appeals Council.

Summerville protectively filed a second application for SSI benefits on February 22, 2010, alleging the existence of a statutory disability beginning on December 4, 2006. R. at 18, 164. On July 7, 2010, the Appeals Council denied Summerville's earlier request for review. R. at 92. The Bureau denied Summerville's second application on August 4, 2010. R. at 104. Summerville responded on October 6, 2010, by filing a request for an administrative hearing. R. at 110-112. On September 13, 2011, a hearing was held in Mars, Pennsylvania, before Administrative Law Judge ("ALJ") Joanna Papazekos. R. at 37. Summerville, who was represented by counsel, appeared and testified at the hearing. R. at 41-70, 75-76. George J. Starosta ("Starosta"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. R. at 70-75. In a decision dated October 26, 2011, the ALJ determined that Summerville was not "disabled" within the meaning of the Act. R. at 18-32. After receiving the ALJ's decision, Summerville filed another request for review.

On December 20, 2011, Summerville filed a third application for SSI benefits. ECF No. 18 at 24. The application was administratively denied. Summerville later requested an administrative hearing. *Id.* The Appeals Council denied Summerville's second request for review on April 26, 2013, thereby making the ALJ's decision the "final decision" of the Commissioner with respect to the second application. R. at 1. Summerville commenced this action on June 26, 2013, seeking judicial review of the Commissioner's decision. ECF Nos. 1-2.

A hearing concerning Summerville's third application for benefits was held before Administrative Law Judge John Kooser on September 4, 2013. ECF No. 18 at 24. On

November 18, 2013, Judge Kooser determined that Summerville had been "disabled" since December 20, 2011. *Id.* at 21-31. In his decision, which was fully favorable to Summerville, Judge Kooser declined to reopen the ALJ's decision pertaining to the second application. *Id.* at 24.

Summerville moved for summary judgment on March 26, 2014. ECF No. 17. On May 28, 2014, the Commissioner filed a motion for summary judgment. ECF No. 20. The pending motions for summary judgment are now ripe for disposition.[1] This report and recommendation is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

### III. <u>Standard of Review</u>

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541,

---

[1] The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Federal Rule of Civil Procedure 56. *Banks v. Shalala*, 43 F.3d 11, 13-14 (1st Cir. 1994); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985). In this context, the procedure typically employed at the summary-judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support [of] and in opposition to the[ir] respective positions." *Sumler v. Bowen*, 656 F.Supp. 1322, 1330 (W.D.Ark. 1987).

3

101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose

of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to

be a more adequate or proper basis. To do so would propel the court into the
domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV. The ALJ's Decision

In her decision, the ALJ determined that Summerville had not engaged in substantial gainful activity subsequent to his protective filing date. R. at 20. Summerville was found to be suffering from a testosterone deficiency, obesity, a bulging disc, foraminal narrowing, a mood disorder, an anxiety disorder, opiate dependence, cannabis dependence, polysubstance dependence, and cluster B traits with anti-social behavior. R. at 20. These impairments were deemed to be "severe" under the Commissioner's regulations. R. at 20-21; 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Summerville's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 21-25.

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Summerville's "residual functional capacity"[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) where he performs postural maneuvers only occasionally; where he is limited to simple, routine, repetitive, unskilled tasks; where the work is not quota-based (i.e. would not have to keep up with a machine or have to

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

6

perform so many widgets an hour); where he would perform no work with the public; where he would perform no work with co-workers as part of a team (he could work in the vicinity of others, but not in concert with them); where he would have occasional contact with supervisors.

R. at 25. Summerville had "past relevant work"[3] experience as a construction worker and substitute postal carrier. R. at 184, 205. Starosta respectively classified those positions as "semi-skilled"[4] and "unskilled"[5] jobs at the "heavy"[6] and "medium"[7] levels of exertion. R. at 71. Since Summerville was deemed to be physically capable of performing only a range of work at the "light"[8] level of exertion, it was determined that he could not return to his past relevant work. R. at 30-31.

Summerville was born on August 17, 1974, making him thirty-five years old on his protective filing date and thirty-seven years old on the date of the ALJ's decision. R. at 41-42. He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c). Summerville had more than a high school education and an ability to communicate

---

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.
[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).
[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).
[6] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).
[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).
[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

in English. R. at 42, 183; 20 C.F.R. § 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Summerville could work as a linen folder, garment packer or remnant sorter. R. at 31. Starosta's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[9] R. at 72.

## V. Discussion

After completing high school, Summerville studied electronic technology at ITT Technical Institute. R. at 42. He never finished the training program. R. at 42. Summerville later started to work as a construction worker in the field of home improvement. R. at 42. Between May 1995 and January 1998, Summerville spent some time working as a part-time mail carrier for the United States Postal Service. R. at 184, 205. He apparently worked as a substitute carrier on some Saturdays. R. at 57. Summerville stopped working on December 4, 2006. R. at 183. At the hearing, Summerville testified that he had stopped working after sustaining a back injury. R. at 42.

When he filed the instant application for SSI benefits, Summerville listed December 4, 2006, as his alleged onset date. R. at 164. That date preceded Judge Pileggi's decision denying Summerville's first application. R. at 82-91. In any event, SSI benefits are not available on a retroactive basis. 20 C.F.R. § 416.335. At the hearing held before the ALJ, Summerville amended his alleged onset date to February 22, 2010, which was his protective filing date. R. at 76. Although Summerville had previously received inpatient psychiatric treatment, the ALJ recognized in her decision that his last hospitalization had occurred in 2007. R. at 24.

---

[9] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

Summerville purports to raise five different issues in support of his motion for summary judgment. ECF No. 18 at 9-20. Three of those issues are inextricably intertwined. They relate to the ALJ's assessment of Summerville's residual functional capacity. Summerville contends that, in determining his residual functional capacity, the ALJ failed to give appropriate weight to the opinion of his treating psychiatrist and the testimony given by him at the hearing. *Id.* at 9-18.

Dr. Grace M. McGorrian has been Summerville's treating psychiatrist for several years. R. at 301-323. On a form submitted to Pennsylvania's Department of Public Welfare in January 2010, Dr. McGorrian checked a box indicating that Summerville was "permanently disabled." R. at 292. She wrote the word "probable" underneath the checkmark. R. at 292. The ALJ accorded "little weight" to Dr. McGorrian's statement in determining Summerville's residual functional capacity. R. at 29. It was specifically noted that Dr. McGorrian's assertion had been "indecisive." R. at 29. Summerville maintains that the ALJ erred in rejecting Dr. McGorrian's opinion. He inexplicably claims that, at the time of the ALJ's decision, Dr. McGorrnian's assessment was the only "report" in the record expressing an opinion concerning his ability to work. ECF No. 18 at 9; ECF No. 22 at 1. Contrary to Summerville's suggestion, the ALJ's decision was premised on medical reports prepared by examining and nonexamining sources.

On June 15, 2010, Dr. T. David Newman performed a consultative psychological evaluation of Summerville in connection with his application for SSI benefits. R. at 326-331. After completing the evaluation, Dr. Newman reported that Summerville had "moderate" limitations in his abilities to carry out instructions, understand and remember detailed instructions, and interact appropriately with co-workers and members of the general public. R. at 329. Summerville's abilities to understand and remember short, simple instructions were deemed to be only "slightly" limited. R. at 329. No other mental limitations were found. R. at

9

329-330. At the end of his examination report, Dr. Newman observed that he was not able to comment on the extent to which "back pain" affected Summerville's ability to work. R. at 330.

Dr. Arlene Rattan, a nonexamining psychological consultant, opined on June 17, 2010, that Summerville was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." R. at 334. In the narrative portion of her consultative report, Dr. Rattan explained:

> The claimant's ability to understand and remember complex or detailed instructions is limited, however, he would be expected to understand and remember simple one and two-step instructions. He can perform simple, routine, repetitive work in a stable environment. He can make simple decisions. He is capable of asking simple questions and accepting instruction. Moreover, he can sustain an ordinary routine without special supervision.

R. at 334. Summerville's subjective complaints were deemed to be only "partially credible." R. at 334. Dr. Rattan found Dr. Newman's examination findings to be "partially consistent" with her own assessment. R. at 334. In determining Summerville's residual functional capacity, the ALJ accorded "significant weight" to the assessments prepared by Dr. Newman and Dr. Rattan. R. at 29.

The probative force of any medical opinion can only be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). An administrative law judge "is not free to employ [his or] her own expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). For this reason, an administrative law judge who is presented with uncontradicted opinion evidence from medical sources may not reject the opinions expressed by those sources based solely on his or her own interpretation of raw medical data. *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

When the opinion evidence is in conflict, however, the administrative law judge is ordinarily free to credit one medical opinion over another. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505-506 (3d Cir. 2009); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). An opinion expressed by a treating source does not bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). Given the conflicting opinions voiced by Dr. Newman and Dr. Rattan, the ALJ was not required to credit Dr. McGorrian's conclusory statement declaring Summerville to be "disabled." *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Even if the assessments supplied by Dr. Newman and Dr. Rattan had not been available to the ALJ, she would not have been required to credit Dr. McGorrian's assertion that Summerville was incapable of working. Under the Commissioner's regulations, unsupported opinions of "disability" do not qualify as "medical opinions" entitled to consideration. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Luce v. Astrue*, 523 F.Supp.2d 922, 936 (S.D.Iowa 2007); *Earl-Buck v. Barnhart*, 414 F.Supp.2d 288, 293 (W.D.N.Y. 2006); *Wheat v. Barnhart*, 318 F.Supp.2d 358, 364, n. 11 (M.D.La. 2004); 20 C.F.R. § 416.927(d)(1). A true "medical opinion" particularly describes what a claimant can or cannot do in light of his or her medical condition. 20 C.F.R. § 416.927(a)(2). Dr. McGorrian did not detail Summerville's abilities and limitations on a function-by-function basis. Instead, she merely conveyed the legal conclusion that Summerville was "permanently disabled." R. at 292. The ultimate question of a claimant's "disability" under the Act is reserved for the Commissioner's determination. 20 C.F.R. § 416.927(d)(1). A conclusory opinion centered solely on that question cannot control the adjudicatory process. *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990). The existence of jobs in the national economy consistent with a claimant's residual functional capacity and

11

vocational profile raises a *vocational* question rather than a *medical* question. 20 C.F.R. § 416.966(b). Since Dr. McGorrian was not necessarily familiar with the expectations of employers existing in the national economy, her characterization of Summerville as "disabled" was owed "little deference." *Willis v. Baxter International, Inc.*, 175 F.Supp.2d 819, 832 (W.D.N.C. 2001).

The Global Assessment of Functioning ("GAF") scale was previously used to assess an individual's level of psychological, social and occupational functioning. *Taliaferro v. Astrue*, 788 F.Supp.2d 412, 414, n. 2 (W.D.Pa. 2011). In an updated version of the *Diagnostic & Statistical Manual of Mental Disorders*, the American Psychiatric Association abandoned the GAF scale. *Al-Sherifi v. Commissioner of Social Security*, Civil Action No. 5:13-2193, 2014 WL 4245969, at *4, n. 2, 2014 U.S. LEXIS 118879, at *10, n. 2 (N.D.Ohio Aug. 25, 2014). Summerville contends that low GAF ratings given to him by Dr. McGorrian suggested that he was "disabled." ECF No. 18 at 11-13; ECF No. 22 at 3-6. That argument is unpersuasive. The Commissioner has never utilized the GAF scale for the purpose of determining whether a claimant is entitled to benefits under the Act. *Chanbunmy v. Astrue*, 560 F.Supp.2d 371, 383 (E.D.Pa. 2008). At most, a GAF rating constitutes only one piece of evidence that must be considered within the context of the record as a whole. *Davis v. Astrue*, 830 F.Supp.2d 32, 46 (W.D.Pa. 2011). A claimant's GAF score may correspond with factors that are wholly unrelated to his or her ability to work. *Bracciodieta-Nelson v. Commissioner of Social Security*, 782 F.Supp.2d 152, 165 (W.D.Pa. 2011). In her decision, the ALJ correctly observed that Summerville had continued working until December 2006 even though low GAF scores had been assigned to him as early as 2004. R. at 24.

At the hearing, Summerville testified that he frequently experienced back and shoulder pain while sitting or standing for extended periods of time. R. at 65-69. He argues that the ALJ erred in declining to credit his subjective complaints of pain. ECF No. 18 at 17-18; ECF No. 22 at 9-10. Since the record contains objective evidence of medically determinable impairments that could reasonably be expected to cause pain, Summerville's subjective complaints were entitled to "serious consideration." *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). Nonetheless, the ALJ was not required to credit Summerville's testimony in every conceivable respect. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 363 (3d Cir. 2011). A claimant's testimony can be rejected on the basis of "contrary medical evidence." *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984)(*per curiam*). On July 19, 2010, Dr. Ira E. Baumgartel performed a consultative physical examination of Summerville in connection with his application for SSI benefits. R. at 349-358. After completing the examination, Dr. Baumgartel reported that Summerville had no physical limitations. R. at 351, 353-354. In spite of the negative examination findings, the ALJ partially credited Summerville's testimony by restricting him to a range of "light" work involving only occasional postural maneuvers. R. at 25-27, 30. She "did not merely rubber stamp" Dr. Baumgartel's opinion. *Chandler*, 667 F.3d at 361. Instead, her decision reflected a careful balancing of all relevant evidence. Summerville cannot impugn the ALJ's decision simply by pointing out that his testimony was not accepted at face value. 20 C.F.R. § 416.929(a).

Starosta testified that employers existing in the national economy would generally permit employees to miss one and a half days of work per month, and to be "off task" for roughly ten percent of a typical workday. R. at 74. Suggesting that his absences and "off task" time would exceed those limits, Summerville claims that the ALJ improperly "ignored" Starosta's testimony.

13

ECF No. 18 at 16-17; ECF No. 22 at 8-9. This argument is plainly lacking in merit. The ALJ did not disregard any portion of Starosta's testimony. The testimonial record merely demonstrates that a *hypothetical individual* with additional limitations would not be able to maintain a full-time job. The ALJ was not required to adopt every functional limitation *alleged* by Summerville. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Given that Summerville was deemed to be capable of satisfying the applicable attendance and efficiency requirements, the portion of Starosta's testimony relating to an individual who could not do so was not pertinent to the vocational issues in this case. *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987). The ALJ's residual functional capacity finding accounted for the functional limitations described by Dr. Newman and Dr. Rattan. R. at 25, 329-330, 334. In response to a question describing a hypothetical individual with Summerville's abilities and limitations, Starosta identified jobs in the national economy that could be performed by such an individual. R. at 72. Every functional limitation found by the ALJ was conveyed to Starosta at the hearing.[10] R. at 25, 72. Since the ALJ's hypothetical question accurately portrayed Summerville's work-related capabilities and restrictions, Starosta's testimony satisfied the Commissioner's burden of production at the fifth step of the sequential evaluation process. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 206 (3d Cir. 2008).

The sixth sentence of § 405(g) permits a reviewing court to "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence with is material and that there is good cause for the failure to incorporate such evidence

---

[10] A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony makes reference to all of the claimant's functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is not described, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).

14

into the record in a prior proceeding." 42 U.S.C. § 405(g). When a remand is ordered under sentence six, the reviewing court "does not rule in any way as to the correctness of the administrative determination." *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). Relying on Judge Kooser's November 18, 2013, award of benefits, Summerville asserts that he is entitled to a sentence-six remand even if it is assumed that the decision presently under review is supported by substantial evidence. ECF No. 18 at 19-20; ECF No. 22 at 10-13.

In order to obtain a sentence-six remand, Summerville must demonstrate that he had "good cause" for failing to present "new and material" evidence to the ALJ. *Matthews v. Apfel*, 239 F.3d 589, 592-593 (3d Cir. 2001). "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Summerville has not presented any additional "evidence." Instead, he has merely provided the Court with a copy of Judge Kooser's "fully favorable" decision. ECF No. 18 at 21-31. Under the Commissioner's regulations, the existence of "[n]ew and material evidence" can constitute a reason for reopening a prior administrative decision. 20 C.F.R. §§ 416.1488(b), 416.1489(a)(1). In his decision awarding benefits to Summerville, Judge Kooser found "no basis to reopen" the ALJ's decision in this case. ECF No. 18 at 24. Consequently, Judge Kooser's decision cannot *alone* establish the propriety of a remand. Since the "evidence" underpinning that decision is not presently available, the Court cannot give further consideration to Summerville's request for an order requiring the Commissioner to receive and consider it. In light of the existing record, it suffices to say that the Commissioner's decision denying

15

Summerville's second application for SSI benefits is "supported by substantial evidence" and should be affirmed. 42 U.S.C. § 405(g).

## VI. Conclusion

For the foregoing reasons, it is respectfully recommended that Summerville's motion for summary judgment (*ECF No. 17*) be denied, that the Commissioner's motion for summary judgment (*ECF No. 20*) be granted, and that the Commissioner's decision be affirmed. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair his or her ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

Dated: September 9, 2014                              s/Lisa Pupo Lenihan
                                                      LISA PUPO LENIHAN
                                                      Chief U.S. Magistrate Judge

cc:     All Counsel of Record